UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED TRANSPORTATION UNION and
CARMEN J. FAMULARE,

                      Plaintiffs,

  -v.-                                              1:06-CV-00503
                                                           (LEK/RFT)
NATIONAL RAILROAD PASSENGER
CORPORATION,

                      Defendant.

## **MEMORANDUM-DECISION AND ORDER[1]**

Plaintiffs United Transportation Union ("UTU") and Carmen J. Famulare ("Famulare") filed this Complaint, pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA" or "Act"), on April 24, 2006 against Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant"). Compl. (Dkt. No. 1). Plaintiffs seek review of the Award rendered by Public Law Board No. 6865 ("Board"), which upheld Defendant's termination of Famulare's employment. Id. The Board denied Plaintiffs' claim that Famulare's dismissal, stemming from actions he took while serving as a union representative, violated the RLA. Administrative R., Award No. 10 (Dkt. No. 15, Attach. 1) at 2-3 ("Award"). Pursuant to 45 U.S.C. § 153 First (q), Plaintiffs are asking the Court to overturn and set aside the Award and restore Famulare to his previous position as conductor.[2] Compl. (Dkt. No. 1) at ¶¶ 1, 8.

Presently before the Court are Motions for summary judgment filed each by Plaintiffs and

---

[1] **For printed publication by the Federal Reporters.**

[2] Plaintiffs also seek attorneys' fees for Plaintiff UTU. Compl. (Dkt. No. 1).

1

Defendant. In their summary judgment Motion, Plaintiffs are asking this Court to set aside the Award on the following grounds: (1) the Board's decision failed to comply with the RLA because the Board did not enforce an RLA provision prohibiting employers from disciplining employees for conduct occurring in the capacity of union representative; and (2) the Board exceeded its jurisdiction by failing to abide by the same RLA provision, which was incorporated into the collective bargaining agreement.[3] Pls.' Mem. of Law (Dkt. No. 16, Attach. 3) at 2. Defendant's Motion for summary judgment asks the Court to dismiss the Complaint, thereby upholding the Award in its entirety. Def.'s Mot. (Dkt. No. 17) at 1.

## I. Background

Plaintiff Famulare was employed by Amtrak as a conductor beginning in 1994 and also served as local chairman of the United Transportation Union, the labor union authorized to represent certain classes of Amtrak employees. Compl. (Dkt. No. 1) at ¶¶ 2-3; Def.'s Stmnt. of Mat. Facts (Dkt. No. 17, Attach. 1) at ¶¶ 2-3. One duty of the local chairman is to represent Amtrak employees at on-property investigation hearings, if an employee elects to have union representation at this disciplinary proceeding. Pls.' Stmnt. of Mat. Facts (Dkt. No. 16, Attach. 2) at ¶ 5; Def.'s Resp. (Dkt. No. 18, Attach. 4) at ¶ 5. Famulare represented an Amtrak employee, Warren Cox, at one such investigatory hearing on February 4, 2005. Pls.' Stmnt. of Mat. Facts (Dkt. No. 16, Attach. 2) at ¶ 7; Def.'s Resp. (Dkt. 18, Attach. 4) at ¶ 7. Amtrak accused Famulare of attempting to bribe a witness for Amtrak, who was not an Amtrak employee, during a break in the hearing by offering her

---

[3] 45 U.S.C. § 152 Eighth incorporates 45 U.S.C. § 152 Third into all collective bargaining agreements formed under the RLA.

free transportation in exchange for altering her testimony against Cox. Pls.' Stmnt. of Mat. Facts (Dkt. No. 16, Attach. 2) at ¶ 8. For purposes of this appeal, the Board's factual finding that Famulare did engage in this conduct is conclusive upon the Court. See § 153 First (q). Plaintiffs had argued Famulare's innocence before the Board, which ultimately rested its decision on a judgment that the Amtrak witness was more credible than Famulare. Award (Dkt. No. 15, Attach. 1) at 2.

Based on this conduct, Amtrak charged Famulare with violating various Amtrak Service Standards and removed him from service. Administrative R., Letter to Famulare (Dkt. 15, Attach. 16) at 1-3. After a formal investigation and hearing, Amtrak issued a Notice of Discipline terminating Famulare's employment on March 17, 2005. Pls.' Stmnt. of Mat. Facts (Dkt. No. 16, Attach. 2) at ¶¶ 9-11. UTU subsequently pursued a grievance on behalf of Famulare, which proceeded through the on-property appeal process delineated in the collective bargaining agreement, and then to binding arbitration before the Board. Def.'s Stmnt. of Mat. Facts (Dkt. No. 17, Attach. 2) at ¶¶ 5-8; see 45 U.S.C. § 151 *et seq*. The parties opted to utilize the public law board in lieu of National Railroad Adjustment Board arbitration. See Award (Dkt. No. 15, Attach. 1) at 1.

While Amtrak asked the Board to confirm the outcome of the on-property proceedings, UTU argued, *inter alia*, that Amtrak's dismissal of Famulare violated the RLA because it was based on his activities as a union representative, not an employee. See Administrative R., Carrier Submission to Board (Dkt. No. 15, Attach. 3); Administrative R., UTU Submission to Board (Dkt. No. 15, Attach. 16). With regard to this argument by Plaintiffs, the Board concluded that under the RLA,

> significant latitude is provided to employee-representatives when functioning as such.
> However, that latitude falls far short of being a 'cloak of immunity,' and does

> not cover activities such as that involved in this case. If representatives from either side were permitted to bribe or otherwise suborn witnesses, the time-tested disciplinary process would have no validity or credibility. Under these circumstances, we find that the Grievant was subject to discipline if the charges were proved. Additionally, we find no credible evidence of union animus.

Award (Dkt. No. 15, Attach. 1) at 2. The Board found Famulare guilty of the charges and denied Famulare's claim to be restored to his employment position. Id. at 2-3.

## II.  Discussion

### A.  Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rest upon the mere allegations or denials" of the pleadings; bald assertions or conjecture

4

unsupported by evidence are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56(e); Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

In the present case, no material facts remain in dispute. See 45 U.S.C. § 153 First (q); Pls.' Resp. (Dkt. No. 19, Attach. 1) at 2-3; Def.'s Resp. (Dkt. No. 18, Attach. 1) at 1. The Court will render judgment as a matter of law, pursuant to Rule 56. Fed. R. Civ. P. 56.

**B.     Judicial Review of An Award Under the Railway Labor Act**

The RLA delineates the rights of railroad employees under collective bargaining agreements and proscribes the procedures, including the use of binding arbitration, for resolving employment disputes that arise between an interstate carrier and employee. See 45 U.S.C. §§ 151-188. § 153 First (q) provides that an aggrieved party may seek limited review of an arbitration award in federal district court. When parties have agreed to use a public law board, appeal can be made to a district court to the same extent as when an award is rendered by the National Railroad Adjustment Board. See, e.g., Shafii v. PLC British Airways, 22 F.3d 59, 61 (2d Cir. 1994).

There are three grounds upon which a court may properly set aside an arbitration award: (1) "failure of the division to comply with the requirements of this chapter"; (2) "failure of the order to conform, or confine itself, to matters within the scope of the [arbitration board's] jurisdiction"; or (3) "fraud or corruption" by an arbitrator. § 153 First (q). In their present Motion, Plaintiffs assert they are entitled to summary judgment based on the first and second grounds. The third ground is not raised in this case. Defendant argues that Amtrak is entitled to summary judgment because the high standard for overturning an arbitration award is not met.

5

The Supreme Court described the scope of judicial review available under § 153 First (q) as "among the narrowest known to the law . . . . " Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 91 (1978) (citation omitted). In determining the availability of review of a case arbitrated under the RLA, "[t]he dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act." Id. at 93.[4]

Further explicating the scope of review, the Second Circuit stated that "'perhaps review is a misnomer;' where fraud is not an issue, we ask only 'whether the arbitrators did the job they were told to do–not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" CSX Transp., Inc., v. United Transp. Union, 950 F.2d 872, 877 (2d Cir. 1991) (quoting Bhd. of Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co., 768 F.2d 914, 921 (7th Cir. 1985)). Congress intended arbitration boards, composed of individuals familiar with the industry, its practices, and the collective bargaining agreements, to serve as the final arbiters of disputes about the meaning of provisions of collective bargaining agreements formed pursuant to the RLA. See, e.g., Sheehan, 439 U.S. at 402-403; Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 309-312 (1989); Transp.-Commc'n Employees Union v. Union Pac. R.R. Co., 385 U.S. 157, 160-165 (1966); S. Rep. No. 89-1201 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2285, 2285-2290. By contrast, the rationale for almost entirely abdicating review over the interpretation of provisions

---

[4] In Int'l Ass'n of Machinists & Aerospace Workers v. Metro-North Commuter R.R., 24 F.3d 369, 371 (2d Cir. 1994) (citations omitted), the Court of Appeals for the Second Circuit noted a split among the federal circuits as to whether the three statutory grounds are, in fact, exclusive. The Second Circuit stated, "this Circuit adheres to the majority view that due process affords a fourth ground for judicial review." Id. See also Shafii, 22 F.3d at 62-65. In any event, the existence of a due process ground of review is not in issue here and is not relied upon by the Court in the present matter.

of collective bargaining agreements does not wholly extend to the board's compliance with the Act's own provisions, and this is where courts conduct review for a board's compliance with the Act.  See, e.g., Meeks v. Illinois Cent. Gulf R.R., 738 F.2d 748, 750 (6th Cir. 1984).

### C. Failure to Comply with the Act

#### 1. Scope of "Failure to Comply" Review

Plaintiffs allege that the Award must be set aside due to the Board's "failure to comply with the requirements of this chapter."  Pls.' Mem. of Law (Dkt. No. 16, Attach. 4) at 5; § 153 First (q) (hereinafter "failure to comply review").  As Plaintiffs point out, "this chapter" encompasses the entire RLA.  Pls.' Resp. (Dkt. No. 19, Attach. 1) at 6.  The Court must decide whether Plaintiffs' objection, that "the arbitrator failed to apply" § 152 Third, requires the Award to be vacated.  Pls.' Reply (Dkt. No. 20) at 4.

Defendant argues that the Court is not empowered to review the Award on the ground that the Board failed to comply with § 152 Third.  Def.'s. Mem. of Law (Dkt. No. 17, Attach. 2) at 5.  According to Defendant, the Court would have jurisdiction to review the Board decision only "if *the Board itself* . . . . violated procedural requirements of the RLA . . . . "  Id.  Because § 152 Third is not concerned with proceedings before an arbitration board, Defendant argues that this subsection is not within the purview of a district court directed by § 153 First (q) to review for "failure of the division to comply with the requirements of this chapter."  § 153 (q); Def.'s Mem. of Law (Dkt. No. 17, Attach. 2) at 5-7.

The Court finds few cases, in the Second Circuit or elsewhere, in which federal courts have expressly employed the "failure to comply" prong of § 153 First (q).  Specifically, the Court does

not find any case that attempts to comprehensively define the scope of "failure to comply" review. Furthermore, no circuit has commented on whether § 152 Third may be reviewed under this prong of § 153 First (q),[5] or on the use of this ground to review other subsections of the Act that likewise contain substantive protections or that delineate acceptable conduct between employers and employees.[6]

In general, "failure to comply" review has been employed to facilitate federal court review of a board's compliance with RLA provisions about board procedures, including those that spell out parties' rights that attach during proceedings before an arbitration board. See, e.g., Steward v. Mann, 351 F.3d 1338 (11th Cir. 2003); Meeks, 738 F.2d at 750; Jones v. St. Louis-San Francisco Ry. Co., 728 F.2d 257, 262, 264 (6th Cir. 1984); Bhd. of Ry., Airline, and S.S. Clerks v. St. Louis Sw. Ry., 676 F.2d 132, 135 (5th Cir. 1982).

The present case does not directly raise a discrepancy between the Board's conduct and a RLA provision that speaks to the Board's dispute resolution process. § 152 Third of the Act does not explicitly concern a board's process or parties' protections in the dispute resolution process, but rather is about employees' and employers' rights to be represented in collective bargaining. See §

---

[5] The only case cited by either party that speaks to the application of "failure to comply" review to an appeal grounded on an alleged violation of § 152 is an unreported case from the Western District of Texas. Ruck v. Atchison, Topeka & Santa Fe R.R., No. EP-92-CA-193-B, 1993 WL 388653, at *6 (W.D. Tex. June 11, 1993); see Def. Mot. for Summ. J. Mem. of Law at 5-6 (Dkt. No. 17, Attach. 2), Exh. A (Dkt. No. 17, Attach. 3). In Ruck, the district court declined to conduct such review, stating that "[f]or this Court to set aside a decision of a Public Law Board on grounds the Board failed to comply with requirements of the RLA, this Court must find the actions of the Board itself did not follow a requirement imposed on it by the RLA." Ruck, 1993 WL 388653, at *6 (citations omitted). The Court today simply disagrees with this analysis.

[6] Specifically, §§ 152 Fourth and Fifth similarly restrict relations between employees and employers. 45 U.S.C. §§ 152 Fourth, Fifth. Like § 152 Third, these subsections are incorporated into collective bargaining agreements by § 152 Eighth. See 45 U.S.C. § 152 Eighth.

8

152 Third. However, it is nevertheless part of the Act, and is binding on a board no less than other provisions of the Act. As such, § 152 Third constrains a board's decision-making process and decisions just as provisions that explicitly address board procedures or parties' rights before arbitration boards. The Court does not find a binding or persuasive interpretation of "failure to comply" review that excludes § 152 Third from its reach.

Furthermore, the Second Circuit has stated that "[i]t is well-settled that when the language of a statute is clear and does not contradict a clearly expressed legislative intent, our inquiry is complete and the language controls." U.S. v. Koh, 199 F.3d 632, 636 (2d Cir. 1999) (citation omitted). The RLA expressly directs federal courts to review for a board's "failure to comply with the requirements of this chapter." § 153 First (q). § 152 Third is a subsection of "this chapter." Id. The courts have not held that § 152 Third is excluded from "failure to comply" review. The Court finds that Congress did not manifest a clear intent to exclude § 152 Third as a provision subject to such review. See, e.g., S. Rep. No. 89-1201 (1996), *as reprinted in* 1966 U.S.C.C.A.N. 2285, 2285-2290. In the absence of binding authority to the contrary and in light of the plain language of the statute, the Court is empowered to apply "failure to comply" review to the Board's actions in this case.

**2. Whether the Board Complied with § 152 Third**

In the Award, the Board notes that this case "involves the termination of a union official for activities while he was functioning in that capacity." Award (Dkt. No. 15, Attach. 1) at 2. Plaintiffs argue that, upon making this factual finding, the Board was bound by § 152 Third to disallow the termination. Pls.' Mem. of Law (Dkt. No. 16, Attach. 3) at 9, 1. Plaintiffs argue that the arbitrator, in his tie-breaking opinion, "took it upon himself to determine that the carrier's employee conduct

rules now apply to a [union representative] acting solely in his union capacity." Pls.' Mem. of Law (Dkt. No. 16, Attach. 3) at 11. Conversely, Defendant argues that Amtrak is entitled to summary judgment because the Board found Famulare's firing was not motivated by anti-union animus, and such a finding exhausts a union representative's § 152 Third protections in the post-certification context. Def.'s Mem. of Law (Dkt. No. 17, Attach. 2) at 7-9.

### a. Prior Interpretations of § 152 Third

Section 152 Third[7] applies both in the contexts of pre-certification and post-certification of union representatives.[8] The Supreme Court has read § 152 Third to mean "that employees were free to organize and to make choice of their representatives without the coercive interference and pressure" of an employer. Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 543 (1937) (internal quotation omitted), *quoted by* Trans World Airlines, 489 U.S. at 440. The Second Circuit, among others, has also applied § 152 Third to prohibit employer interference with union representatives in the post-certification context. See Indep. Union of Flight Attendants v. Pan Am.

---

[7] The full text of § 152 Third is the following:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

[8] It is undisputed that the present case involves a union with an established history of representing Amtrak employees, not pre-certification rights. See Compl. (Dkt. No. 1) at ¶¶ 2-3.

10

World Airways, 789 F.2d 139, 142 (2d Cir. 1986). § 152 Third forbids an employer from retaliating against employees or representatives for choosing to unionize or to elect particular representatives.[9] See, e.g., id.; Tello v. Soo Line R.R. Co., 772 F.2d 458, 462 (8th Cir. 1985) (finding that a § 152 Third claim is cognizable with "evidence that [an employer's] actions have been motivated by anti-union animus or that [an employer's] action were an attempt to interfere with its employees' choice of their collective bargaining representative."); accord Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists and Aerospace Workers, 915 F.2d 43, 51 (1st Cir. 1990).

In light of the cases, the Court is not prohibited from finding that Famulare was protected from discipline that was based solely on his actions as a union representative.

### b. Function of § 152 Third

The Court next turns to a more specific examination of whether the Board's decision can be said to comport with § 152 Third. To make this determination, the Court looks to the function of this section in the context of the Act. To begin with, § 151a states that one purpose of the RLA is "to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter"; other purposes include avoiding work stoppages and other unrest through the use of collective bargaining procedures, as well as providing for "prompt and orderly" dispute resolution. 45 U.S.C. § 151a; see, e.g., Sheehan, 439 U.S. at 402. § 152 Third provides that "neither party shall in any way interfere with, influence, or coerce the

---

[9] The Court notes that the Second Circuit has also carved out a "thread of judicial intervention," providing federal courts with original subject matter jurisdiction, notwithstanding § 153 First, over an extremely narrow class of claims of post-certification employer interference with union representation. Indep. Union of Flight Attendants, 789 F.2d at 142 (quoting Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc., 656 F.2d 16, 21 (2d. Cir. 1981) (internal citation omitted). However, the present case is an appeal, and thus the Court employs the standard of review, described *supra*, for cases arbitrated according to § 153 First.

11

other in its choice of representatives." § 152 Third.  The Court's interpretation of § 152 Third is informed by the fact that this section is aimed at, and central to, safeguarding employees' rights to "complete independence" in union activities.  § 151a.

Firing an employee for conduct committed as a union representative, and the threat thereof, plainly interferes with employees' choice of the representative.  The Act does not provide employers with any say over the conduct of the employees' representative while the representative is engaged in his or her representative capacity; in fact, the Act forbids it.  § 152 Third provides unionized employees with the uninhibited right to choose an individual to advocate for them.  Employers inherently "interfere with" this choice if they are allowed to decide what sort of advocacy is acceptable.  The Court finds that the freedom to choose a representative would be hollow if an employer is allowed to fire an employee who is fully engaged in his capacity as union representative, and for an action that is inseparable from his conduct as a union representative.

Furthermore, in this Court's reading, the fact that the Board found no evidence that union animus motivated this particular instance of discipline is an issue apart from whether the Board complied with § 152 Third.  See Award (Dkt. No. 15, Attach 1) at 2.  While the Court assumes, as required by § 153 First (q), that Famulare's discharge was not motivated by union animus, the Court interprets the protection provided by § 152 Third to encompass some instances in which there has not been an explicit finding of union animus.  The fact that employers are not permitted to "interfere with, influence, or coerce" employees' choice of a representative contemplates protection from a broader range of employer actions than those that are necessary to support a finding of union animus. § 152 Third.

To review, the act committed by the union representative in this case was the attempted

12

bribery of a witness during a short break in a disciplinary hearing at which the representative was present solely in his capacity as a union representative, according to the Board's factual findings. See *supra* Section I.  While a reprehensible act, as an act entirely within the scope of his activities as a union representative, it must be left to the union and employees to determine whether to allow the union representative to continue in that capacity.  Put simply, Famulare was not subject to Amtrak's code of conduct, upon which his discipline is premised, while engaged in his representative capacity at the hearing.

**D.  Whether the Board Exceeded Its Jurisdiction**

Plaintiffs also assert they are entitled to reversal of the Board's decision on the ground that the Board exceeded the scope of its jurisdiction in interpreting the collective bargaining agreement. Compl. (Dkt. No. 1) at ¶ 12.  Because the Court reverses the Board for failing to comply with § 152 Third, the Court need not reach a decision on the issue of whether the Board exceeded its jurisdiction.

### III.  Conclusion

The Court holds that the Award is invalid and must be set aside because the Board failed to comply with the RLA.  Amtrak is to reinstate Plaintiff Famulare to his previous position, with full compensation since the date of discharge and the full restoration of his seniority and vacation rights. Plaintiffs are not awarded attorneys' fees because the Act does not provide for such fees for an appeal under § 153 First (q)**.**  Accordingly, it is hereby

**ORDERED**, that Award No. 10, Case No. 24, of Public Law Board No. 6865 is **SET**

**ASIDE**; and it is further

**ORDERED**, that Plaintiffs' Motion for summary judgment (Dkt. No. 16) is **GRANTED**, except for the request for attorneys' fees, which is denied.  Defendant Amtrak is directed to act reasonably to restore Plaintiff Carmen J. Famulare to his position of employment, with seniority and vacation rights unimpaired; and to fully compensate Plaintiff Famulare for the period of time between his discharge and reinstatement; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:      February 04, 2008
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge